UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MICHAEL G. MORGAN,                    )

    Plaintiff,                        )

    v.                                )       Docket No. 3:03CV00905(AVC)

OFFICE OF THE UNITED STATES       )       November 3, 2003
ASTTORNEY FOR THE DISTRICT OF
CONNECTICUT, et. al,              )

    Defendants.                       )

**REPLY DECLARATION OF MARTIN JEFFERSON DAVIS IN SUPPORT OF MOTION
OF THE OFFICE OF THRIFT SUPERVISION FOR SUMMARY JUDGMENT**

Martin Jefferson Davis declares under penalty of perjury

pursuant to 28 U.S.C. §1746:

1.  I am a Senior Trial Attorney in the Office of Chief

Counsel, Office of Thrift Supervision ("OTS").  I have had

responsibility for handling the Freedom of Information Act

("FOIA") request submitted directly to OTS by Michael Morgan in

September, 2002.  I submit this declaration to provide this Court

with true copies of correspondence related to this request and

with some limited additional background information.

2.  On September 3, 2002, Michael Morgan submitted a FOIA

request by facsimile letter to OTS at its Washington, D.C.,

headquarters.  This request sought a copy of "any and all files,

records, and any other documents or materials in the possession

of your agency under my name." A true copy of the September 3

letter request is annexed hereto as Ex. A.

3.  On May 29, 2003 I sent a letter to Mr. Morgan advising

him, among other things: that OTS had identified approximately 32 boxes of agency records that contained material that might be responsive to his request; that the costs of processing his request could amount to several thousand dollars; that, as required by regulations of the Department of Treasury, such costs must be paid in advance; and that agency records indicated that in 1995 OTS made these documents (with the exception of certain privileged documents) available to his defense counsel in his pending criminal case. My letter also requested that Morgan clarify how he wished to proceed, in particular whether he wished to narrow his request to reduce costs. A true copy of my May 29 letter, to which is attached a copy of a letter from Mr. Morgan's defense counsel to OTS dated June 29, 1995 and a copy of a protective order entered in his criminal case relating to OTS documents, is annexed as Ex. B.

4.    Mr. Morgan responded by letter dated June 3, 2002. In this letter, Mr. Morgan, among other things, claimed that no fees should be assessed him and that he was entitled to a fee waiver. A true copy of his June 3 letter is annexed as Ex. C.

5.    On June 11, 2003, I sent Mr. Morgan a further letter. My letter indicated, among other things, that his request for a fee waiver did not meet applicable requirements and was denied; that he could appeal that determination to the agency; and that, if he wished to proceed with his request, he should forward a

2

check to OTS for $3,000 to cover the estimated costs of searching for and duplicating records responsive to his request.  A true copy of my June 11 letter is annexed as Ex. D.

6.  Mr. Morgan has not responded to my June 11 letter and has not paid the required $3,000 fee to OTS.  He has also not appealed the determination that he was not entitled to a fee waiver.


I declare under penalty of perjury this 30th day of October, 2003, that the foregoing is true and correct.

Martin Jefferson Davis

September 3, 2002


Office of Thrift Supervision
FOIA
1700 G Street, N.W.
Washington, D.C. 20552
Fax No. 202-906-7755

Re: Michael G. Morgan

Gentlemen:

This is a formal request for information under the Freedom of Information Act and the Privacy Act.

I hereby request a copy of any and all files, records, and any other documents or materials in the possession of your agency under my name. I also wish to confirm that I am the person making this request and that I have an interest in the information being requested hereunder.

It is my understanding that the cost of the first 100 pages of photocopying is free. I am willing to pay charges for additional copies. However, I request that you notify me of the total cost that will be involved. In addition, I am requesting that you provide me with a detailed index of the available files and records. If some of this request is exempt from release, please furnish me with those parts that can reasonably be segregated and provide me with an indexing, itemization and detailed justification for the claimed exemptions, along with references to the statute, regulation, or rule of law which mandates such exemptions.

Please be advised that I have an FOIA suit pending against the Office of the United States Attorney for the District of Connecticut, Case Number: 3:02cv905 (AVC). In that case, the Government has represented to the Court that there are 341 pages of documents referred to your agency. Consequently, your failure to respond to this request within the statutory 20 day period may result in the OTS being named as an additional defendant.

I declare under the laws of the United States of America, including specifically 28 U.S.C. sec. 1746(l), that the foregoing is true and correct, and that I am the person making this request, and that my signature appears below. I further direct your attention to the holding in the case entitled Summers v. United States Department of Justice, 999F. 2d

570 (D.C. Cir. 1993), which permits this request to be made pursuant to a sworn statement, signed under penalty of perjury, and this request need not be notarized.

Sincerely,

Michael G. Morgan
415 South Chesterfield Street
Aiken, South Carolina 29801
(803) 641-8823
DOB: 8-15-46
Place of birth:  Stamford, Connecticut
SSI:  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



**Office of Thrift Supervision**
Department of the Treasury

1700 G Street, N.W., Washington, DC 20552 • (202) 906-6000

May 29, 2003

<u>**VIA ELECTRONIC (without enclosures) AND FIRST CLASS MAIL**</u>
Mr. Michael G. Morgan
415 South Chesterfield Street
Aiken, South Carolina 29801

Re: FOIA Request No. 02-514

Dear Mr. Morgan:

I am writing concerning your Freedom of Information Act ("FOIA") and Privacy Act request to the Office of Thrift Supervision ("OTS") by letter dated September 3, 2002. Your letter sought a "copy of any and all files, records, and any other documents or materials in the possession of your agency under my name." In particular, I would like to clarify the scope of your request and set forth several options available to you for its processing.

First, I would like to address your request under the Privacy Act for access to your records within any agency system of records. Please be advised that, pursuant to federal law and regulation, records within two systems of records maintained by OTS (the Confidential Individual Information System and the Criminal Referral Database) are exempt from disclosure under the Privacy Act. See 31 C.F.R. 1.36. Accordingly, we are not in a position to disclose any records related to you that may be in these two systems. OTS does not have any records related to you and that are retrievable by your name within any other agency system of records.

With respect to your request under FOIA, we have identified your request as one for which you are required to pay search and duplication costs, excluding the first 100 pages of duplication and the first two hours of search time.

As you know, prior to receiving your September 3rd letter request, the Department of Justice ("Justice") referred 341 pages of documents to OTS for consideration and direct response to you. I provided 218 of those 341 pages to you with my letter dated November 18, 2002. On May 13, 2003, I provided you with portions of 2 additional pages that were referred to OTS by the Department of Treasury ("Treasury") and received by OTS on April 21, 2003. The remaining pages that were referred by Justice and Treasury and were withheld by OTS are the subject of the current litigation in the United States District Court for the District of Connecticut and, as

Page 2

directed by the Court, OTS will shortly provide you with a <u>Vaughn</u> index identifying those materials.

In addition to the materials OTS received from Justice and Treasury, OTS has a considerable volume of material related to you and Charter Federal Savings and Loan in its own files. We have identified approximately 32 boxes that contain such materials.

Our records indicate that in 1995 OTS made these records (with the exception of certain documents covered by the attorney-client, attorney work product, and deliberative process privileges) available to your counsel in <u>United States v. Morgan</u>. See enclosed copies of a letter from your counsel, Hubert J. Santos, dated June 26, 1995, and the stipulated protective order entered in <u>United States v. Morgan.</u> Our records also indicate that documents were provided by OTS to the U. S. Attorneys' Office and then provided by that office to Mr. Santos.

Particularly in light of the fact that your counsel previously had access to and copied a substantial volume of OTS records related to you and Charter Federal, we are not clear whether you intended the September 3 FOIA request to cover all records related to you or, rather, to be limited to material referred to OTS by Justice and Treasury. Accordingly, I would appreciate it if you would advise me in writing whether we should (1) limit your request to those materials referred to OTS by the Departments of Justice and Treasury; or (2) read your request as seeking all records in OTS' possession related to you.

In the event you seek to have OTS provide you with all records in its possession related to you, you are responsible, as noted, for copying costs after the first 100 pages (at $.20 per page) and search costs after the first two hours. In accordance with Treasury regulations, we will require that the estimated costs, which in this case could amount to several thousand dollars or more, be paid in advance.

A third possible option, to reduce costs, is to narrow the scope of your request. If you wish to pursue this option, I think it makes most sense if you telephone me (at 202-906-6502) so that we can discuss the parameters of the request.

Thank you again for your cooperation. We will wait to hear from you before proceeding further. You may e-mail me or telephone me if you have any questions.

Most sincerely,

Martin Jefferson Davis
Senior Attorney

SANTOS, PECK & SMITH, P.C.

ATTORNEYS AT LAW

51 RUSS STREET

HARTFORD, CONNECTICUT 06106-1566

HUBERT J. SANTOS
A. SUSAN PECK
SUSAN K. SMITH
HOPE C. SEELEY

TELEPHONE
(203) 249-6548

TELECOPIER
(203) 724-5533

**VIA CERTIFIED MAIL**

June 26, 1995

Ms. Nadine Washington
Secretary
Office of Thrift Supervision
1700 G Street, N.W.
Washington, DC 20552

Gary Gegenheimer, Esq.
Office of Thrift Supervision
Suite 405
745 Atlantic Avenue
Boston, MA 02111

Re:  **Request for Release of Unpublished OTS**
**Information re: the Former Charter Federal**
**Savings & Loan Assoc., Stamford, Conn., OTS No. 8009**

Dear Ms. Washington and Mr. Gegenheimer:

I represent Michael G. Morgan in connection with his defense of a criminal indictment which is being prosecuted by the United State's Attorney's Office for the District of Connecticut. The criminal proceeding has been stayed temporarily while an interlocutory appeal has been pending. In anticipation of this matter being reactivated and set for trial, however, we would like to request that copies of pertinent records be made available for our review (and copying of any such records we later designate for duplication). Exhibit A to this letter identifies the particular documents we seek.

Mr. Morgan was previously a director, officer and shareholder of Charter Federal Savings and Loan Association, Stamford, Connecticut ("Charter Federal") from the time that it opened for business in 1984 until it was placed under government control in 1990.

I enclose a copy of the indictment pending against Mr. Morgan, which forms the basis for this request to review Federal Home Loan Bank Board ("FHLBB") and Office of Thrift Supervision ("OTS") records. You will note that the scope of requested

records set out on Exhibit A is broader than the specific transactions included in the indictment. This is because Mr. Morgan's defense may necessarily delve into matters not directly identified in the indictment, but which relate to the operation, activities, supervision and regulation of Charter Federal. It is, of course, essential that Mr. Morgan be afforded an opportunity to defend himself with all such information because his activities involving Charter Federal are the focal point for the serious criminal charges made against him.

It is my understanding that requests for unpublished OTS records are considered on a case-by-case basis in accordance with the procedures and guidelines set out in proposed 12 C.F.R. § 510.5 (58 Fed. Reg. 64, 695, 12/9/93). Accordingly, please consider this request to be made pursuant to those guidelines.

1.    The information requested is highly relevant to the purpose for which it is sought.

As explained above, Mr. Morgan faces serious criminal charges that carry severe penalties for fines and imprisonment if he is convicted. He is entitled to defend himself with all relevant materials that document the history of his service to and management of Charter Federal, as well as the history of his and Charter Federal's examination, supervision and overall regulation by the FHLBB and OTS.

Prior to the indictment, Mr. Morgan was investigated by OTS for a period of several years. Mr. Morgan first became aware that OTS has commenced an investigation relating to him in April of 1990 and it concluded on January 19, 1993 when OTS issued a formal Notice of Charges against Mr. Morgan pursuant to Title 12, United States Code, § 1818(b). OTS notified Mr. Morgan of its intention to prohibit him from participating in the conduct of affairs of federally insured depository institutions. The same transactions which are the subject of the indictment were also the focus of the Notice of Charges. In fact, the allegations contained in OTS' Notice of Charges is almost identical to the language in the indictment.

2.    The information is not available from other sources.

Mr. Morgan did not maintain complete personal files of the examination and supervisory activities that pertained to Charter Federal, and not all information is available from the RTC.

June 26, 1995

---

3. <u>The need for the requested records clearly outweighs the need to maintain the confidentiality of the information and the burden on OTS to produce it.</u>

The interest of OTS in preserving confidentiality should be lessened substantially by the fact that Charter Federal failed in 1990. Any continuing OTS interest in preserving confidentiality of failed institution records should be obviated in this case by the passage of several years time.

Moreover, as to the anticipated burden on OTS to produce such records, we do not anticipate or request that OTS review and identify individual documents to be produced to us. Rather, we seek production of the broad categories of files set out on Exhibit A. We shall then review the files ourselves to select documents deemed relevant to Mr. Morgan's defense. This should substantially reduce the burden on OTS to comply with this request.

Please let me know if the confidentiality agreement or stipulation or stipulation is required prior to your production of records. In addition, this is to request that the pertinent records formerly maintained in the Boston district office of the FHLBB/OTS (and the Federal Home Loan Bank of Boston) be produced to us when they are gathered and available. If the requested records from the Washington, D.C. offices of the FHLBB/OTS will take longer to collect and produce, we would like to receive them in a second production rather than delay our review of the former Boston-based records.

Thank you for your consideration in this matter.

Very truly yours,

HUBERT J. SANTOS

HJS/taa
Enclosure

## EXHIBIT A

### I

### DEFINITIONS AND CLARIFICATIONS RE: DOCUMENTS REQUESTED FROM OTS

1.  The following words, when used in this Request, will have the meanings indicated:

A.  The terms "document" and "documents" mean any and all letters, correspondence, memoranda, financial records, reports, work papers, statements, and any other writings or data compilations of any kind in the possession, custody or control of OTS.

B.  The term "OTS" means the Office of Thrift Supervision and its various regional and area offices as well as its employees, agents, attorneys and other representatives, past or present.

C.  The term "FHLBB" means the Federal Home Loan Bank Board and includes the Federal Savings and Loan Insurance Corporation and Federal Home Loan Bank of Boston prior to August 9, 1989, as well as the employees, agents, attorneys and other representatives, past or present, of such entities.

D.  The term "Office of Supervision" refers to the various headquarters offices or divisions responsible for the supervision of Charter Federal during the relevant time period, including the FHLBB's Office of Examinations and Supervision, the FHLBB's Office of Regulatory Policy, Regulation and Supervision, the FHLBB's and OTS's Office of Regulatory Affairs or the successor to such offices as well as the employees, agents, attorneys and other representatives, past or present, of such entities.

E.  The term "Charter Federal" means Charter Federal Savings and Loan Association, Stamford, Connecticut, and its various subsidiaries, including Bedford Equities Corporation and BEC Development Corporation.

2.  Unless otherwise stated in a specific request, all requests contained herein refer to documents generated, sent, copied, reviewed, compiled or otherwise in existence from May 1, 1983 to June 30, 1990.

June 26, 1995                                                           Page 2

## II
## REQUESTS FOR PRODUCTION

1.   Any and all documents that relate to the examinations of Charter Federal conducted by the FHLBB and OTS and all resulting written materials including all reports of examination (whether regular, special or limited), including the confidential sections of such reports, all work papers and "exit interview" materials compiled by the examiners related to each examination report, all management questionnaires prepared by Charter Federal, and any other regular or special reports prepared by, for or about Charter Federal.

2.   Any and all documents that relate to the FHLBB's and OTS's review and "supervision" of Charter Federal, including supervisory correspondence, directives, suggestions, recommendations or requirements directed to Charter Federal, internal memoranda or reports analyzing the content of reports of examination, or other reports or memoranda about Charter Federal, intra-agency correspondence about the performance of the institution or its management and directorate, communications by or between the examination staff, the supervisory personnel the Office of Supervision, and/or other offices of the FHLBB or OTS.

3.   Any and all documents that evidence, reflect or involve any applications of notices filed by Michael G. Morgan or Charter Federal and all documents reflecting the consideration and disposition of such applications or notices by the FHLBB or the OTS.

4.   Any and all documents that relate to the OTS's consideration and determination to appoint a receiver for Charter Federal in 1990, including but not limited to, all recommendations for such action and all documents relevant to such recommendation(s) and the agency's actions relative thereto.

5.   Any and all documents of the FHLBB or OTS that relate to meetings held with Michael G. Morgan or other senior officers or directors of Charter Federal.

6.   Any and all FHLBB or OTS criminal referrals made to the U.S. Department of Justice that related to Charter Federal or any of its officers, directors, employees, agents, borrowers, or other persons transacting business with Charter Federal.

- 2 -

U.S. DISTRICT COURT
WATERBURY, CT 06702

Aug 29   9 16 AM '95

FILED

# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA  :  CR. NO. 3:93CR00212 (TFGD)

                                       :

v.  :

                                         :

MICHAEL G. MORGAN  :  AUGUST 17, 1995

## STIPULATED PROTECTIVE ORDER

WHEREAS, Defendant, Michael G. Morgan (Defendant) has requested the Office of Thrift Supervision (the "OTS") to produce certain documents that Defendant contends relate to this case and which the OTS contends are subject to confidentiality requirements or a federal regulatory privilege (hereinafter, "confidential OTS documents," which also refers to the information contained therein or derived therefrom); and

WHEREAS, the OTS is responsible, among other things, for the chartering, examination, supervision and regulation of savings associations; and

WHEREAS, pursuant to federal regulations at 12 C.F.R. § 510.5 and 31 C.F.R. §§ 1.2 (c)(1)(v) & (viii), and established case law, the confidential documents are exempt from disclosure and may be subject to certain privileges and are the exclusive property of the OTS; and

WHEREAS, the OTS desires to protect the confidential and/or privileged nature of the confidential OTS documents; and

WHEREAS, the OTS has agreed to furnish for examination and inspection only a limited number of the confidential OTS documents, or only limited parts thereof, as determined by the OTS, specifically relating to the Former Charter Federal Savings & Loan Association, Stamford, Connecticut (OTS No. 8009); and

WHEREAS, the parties in this action have agreed to limit the use and dissemination

of all the confidential OTS documents, described above, which are to be furnished to them

by the OTS.

NOW THEREFORE, IT IS HEREBY STIPULATED AND ORDERED THIS 14TH

DAY OF AUGUST 1995 AS FOLLOWS:

1.      The OTS has agreed to produce to the parties in this case only a limited

number of the confidential OTS documents, or only limited parts thereof, as determined by

the OTS, namely those specifically relating to the Former Charter Federal Savings & Loan

Association, Stamford, Connecticut (OTS No. 8009);

2.      OTS does not waive any legal right or privilege applicable to those

confidential OTS documents described in Paragraph 1, which are furnished to the parties in

this case by OTS pursuant to Paragraph 1;

3.      That the confidential OTS documents shall be used only by parties in this case

and only for the purpose of litigating this case and for no other purpose, and under no

circumstance, other than those specifically provided for in this or a subsequent order of the

Court, shall a party receiving such documents disclose any of the confidential OTS

documents to persons other than the following:

a.      The Court, pursuant to Paragraph 6 of this Order;

b.      Counsel who have appeared of record for a party and employees of

such counsel.

c.      Officers or employees of any party who are assisting counsel of record

in the prosecution or defense of this case;

2

d.    Persons specially retained by attorneys of record for parties in this case to assist in the preparation for trial of this action (such as accountants, marketing consultants, statisticians and economists), provided such persons (i) are not regular employees of a named party, and (ii) need such confidential OTS documents in order to perform the services for which they have been specially retained; and

e.    Any person whose testimony is taken or to be taken in this case, except that such person may only be shown confidential OTS documents during his or her testimony and in preparation therefor, and only to the extent necessary to prepare for such testimony.

4.    Prior to disclosing any confidential OTS document to any person pursuant to paragraphs 3(c), 3(d) and 3(e), counsel shall (i) apprise that person of the confidential nature of the documents; (ii) apprise that person that this Court, pursuant to this Order, has enjoined the use of the confidential OTS documents by such person for any purpose other than this litigation and has enjoined the disclosure of the confidential OTS documents and the information contained therein or derived therefrom by that person to any other person, and (iii) show that person a copy of this Order, specifically informing him or her of the contents of paragraph 5.

5.    That each person given access to a confidential OTS document pursuant to paragraphs 3(b), 3(c), 3(d), 3(e) and (4) shall segregate such document from others that are not confidential OTS documents, keep it strictly secure, refrain from disclosing in any manner any information contained in or derived from such document, and keep such document confidential, except as provided for by the express terms of this Order.

3

6.     That in the event counsel for any party files with or submits to this Court any confidential OTS document (by way of pleadings, or any other papers containing or making reference to such document or information), such document shall be filed only in a sealed envelope on which a statement substantially in the following form shall be endorsed:

### CONFIDENTIAL

This envelope contains documents that are subject to a Protective Order entered by the court in this action governing use of confidential OTS documents.

All such documents so filed shall be maintained by the clerk of the Court separate from the public records in this action and shall be released only upon further Order of the Court;

7.     That if any party objects to the designation of a confidential OTS document as "CONFIDENTIAL" within the meaning of this Order such party may apply to this Court for a ruling that the document shall not be so treated after giving ten days' prior written notice of such application to all other parties and to the OTS. Written notice to the OTS shall be addressed as follows:

Office of Thrift Supervision, Northeast Region
Regional Counsel
10 Exchange Place, 18th Floor
Jersey City, NJ 07302

8.     Until this Court enters an order, if any, changing the designation of the document, such document shall continue to be protected as provided for in this order;

9.     That in the event any confidential OTS document is used in any proceeding in this action, including, without limitation, any deposition, such document shall not lose its confidential and privileged status through such use, and the parties shall take all steps reasonably required to protect the confidentiality of such document during such use;

4

10.    That the OTS, if it has cause to believe that a violation of this Order has occurred or is about to occur, has the right to petition this or any other proper court for appropriate relief;

11.    If any legal process, other than the instant matter, or other requests received calling for the production of any OTS documents held by the parties, the parties agree to respectfully decline to produce the documents pursuant to Section 510.5 of Chapter 12 of the Code of Federal Regulations, and immediately notify the Regional Counsel of the West Northeast *AMP* Region of the OTS ("Regional Counsel"). The parties shall advise the attorney or requester at whose instance the process or request was issued, and if necessary, the court that issued the process, that the parties are prohibited from producing OTS documents citing Section 510.5 of Chapter 12 of the Code of Federal Regulations, and refer the attorney or requester to the Regional Counsel.

12.    That at the conclusion of this litigation, all documents and copies thereof of any confidential OTS documents in the possession, custody or control of the parties shall be either returned to the OTS or destroyed. Further, all notes, memoranda, summaries or other documents in the possession, custody or control of the parties referring, describing or relating to confidential OTS documents shall be destroyed. Those parties purporting to have destroyed confidential OTS documents or other documents relating to them pursuant to this paragraph must certify to the OTS in writing that such documents have been destroyed.

SO AGREED:

THE PLAINTIFF,
The United States of America

By: _____
    Kari A. Pedersen
    Federal Bar No. ct03421
    Assistant United States Attorney
    915 Lafayette Street
    Bridgeport, CT 06604
    Tel. No. 203-579-5596

THE DEFENDANT,
Michael G. Morgan

By: _____
    Hubert J. Santos
    Federal Bar No. ct00069
    Hope C. Seeley
    Federal Bar No. ct4863
    Santos, Peck & Seeley, P.C.
    51 Russ Street
    Hartford, CT 06106
    Tel. No. 203-249-6548

OFFICE OF THRIFT SUPERVISION

By: _____
    James M. Porreca
    Regional Counsel
    Office of Thrift Supervision
    10 Exchange Place, 18th Floor
    Jersey City, NJ 07302

6

June 3, 2003

Mr. Martin Jefferson Davis
Senior Attorney
Office of Thrift Supervision
1700 G Street, NW
Washington, D.C. 20552
Fax No. 202-906-6353

Re: FOIA Request No. 02-514

Dear Mr. Davis:

This is in response to your letter dated May 29, 2003. Without having received and reviewed the Vaughn Index which the Court ordered the Office of Thrift Supervision ("OTS") to produce on March 28, 2003, I am not in a position to respond in any detail to the substance of your letter.

However, let me take this opportunity to clarify several procedural matters which you raised:

1. You claim that OTS is unable to release records contained in the Confidential Individual Information System and Criminal Referral Database because such records are exempt pursuant to 31 C.F.R. 1.36. I have checked that cite and find that it does not provide a basis for withholding documents. Moreover, the claim of OTS that it is preserving confidentiality by withholding documents is lessened substantially by the fact that so many years have passed. Charter Federal failed in 1990, I was convicted in 1996. The statute of limitation for any criminal indictment has run out long ago; and, there are no longer any enforcement matters pending with your agency. Accordingly, these records should be produced to me in the interests of justice.

2. There should be no fees assessed to me by OTS in producing the requested documents since my request does not meet the standard for imposing a fee. OTS is well aware of the fact that I have a negative net worth. By trying to impose a fee, OTS is effectively trying to bar the release of documents to which I am entitled. Clearly, there is no commercial interest to be furthered by the requested disclosure. More importantly, however, the disclosure is likely to contribute to the general understanding of government operations or activities, particularly with regard to parallel proceedings. As you know, my civil and criminal cases received widespread coverage in the Connecticut media and my two appeals to the Second Circuit on double jeopardy grounds are published cases. Under these circumstances, my request meets the test for a waiver of fees.

While I do have many of the documents produced to Hubert Santos by OTS and/or the U.S. Attorney's Office, there are obvious gaps in the paper trail. Consequently, I am unable to respond to your several suggested options regarding production until I have reviewed the Vaughn Index.


Sincerely,

Michael G. Morgan
415 South Chesterfield Street
Aiken, South Carolina 29801
(803) 641-8823



**Office of Thrift Supervision**
Department of the Treasury

1700 G Street, N.W., Washington, D.C. 20552 • (202) 906-6000

June 11, 2003

<u>**VIA ELECTRONIC AND FIRST CLASS MAIL**</u>
Mr. Michael G. Morgan
415 South Chesterfield Street
Aiken, South Carolina  29801

    Re:    **FOIA Request No. 02-514**

Dear Mr. Morgan:

    This is in response to your letter of June 3, 2003, which responded to my letter to you of May 29, 2003.

    <u>Vaughn Index.</u>  The <u>Vaughn</u> index you will receive from the Office of Thrift Supervision's ("OTS") on or about June 30, 2003, will cover the documents referred to OTS by the Departments of Justice and Treasury.  It will not cover any other documents in OTS files that may be responsive to the FOIA request you submitted directly to OTS by letter dated September 3, 2002 ("OTS' Own Documents").

    It is OTS' position that your September 3rd request is not, and cannot properly be, a subject matter of the current litigation pending in the district court in Connecticut.  First, that court does not have subject matter jurisdiction to adjudicate any claim you may have related to your September 3rd request because you are not a resident of Connecticut, do not maintain your principal place of business there, and OTS and the documents you seek directly from it are not located in Connecticut.  <u>See</u> 5 U.S.C. 552(a)(4)(B).  Second, we do not read the court's order to require inclusion of OTS' Own Documents in the <u>Vaughn</u> index for that litigation.

    <u>Privacy Act Request.</u>  Your letter asserts that under the Privacy Act, 5 U.S.C. § 552a, OTS may release records contained in the Confidential Individual Information System and Criminal Referral Database.  That assertion is simply erroneous.  <u>See</u> 31 C.F.R. § 1.36(c)(xii).  As my May 29 letter indicated, any records in those databases are exempt from disclosure by law and regulation.

    <u>Fee Waiver.</u>  Your June 3 letter also requests a waiver of the fees involved in the production of OTS' Own Documents.  You assert first that your "request does not meet the standard for imposing a fee."  Your 6/3/03 letter at 1.  You are mistaken.  Since OTS

is an office in the U.S. Department of the Treasury, 12 U.S.C. § 1462a(a), OTS is required to follow 31 C.F.R. § 1.7, the Treasury Department's regulation covering fees in connection with FOIA requests. Since you are not a "commercial use requester," an "educational or non-commercial scientific institution requester," or a "requester who [is a] representative[] of the news media," you fall into the "all other requesters" category. 31 C.F.R. § 1.7(a)(4). "All other requesters" are charged "the full direct cost of searching for and duplicating records that are responsive to the request, except that the first 100 pages of duplication and the first two hours of search time [are] furnished without cost." 31 C.F.R. § 1.7(a)(4).

Alternatively, you seek a waiver of all applicable fees in connection with the above-referenced request on the ground that "the disclosure is likely to contribute to the general understanding of government operations or activities, particularly with regard to parallel proceedings." You represent that your civil and criminal cases received widespread coverage in the Connecticut media, and you note that your two appeals to the Second Circuit on double jeopardy grounds are published cases. Under these circumstances, you assert that your request meets the test for a waiver of fees. Your 6/3/03 letter at 1.

The applicable Treasury Department regulation provides that a written request for waiver of FOIA fees shall be granted in full or in part

> when it is determined, based upon the submission of the requester, that a waiver or reduction . . . is in the public interest because furnishing the information is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.

31 C.F.R. § 1.7(d)(1) (quoting 5 U.S.C. § 552(a)(4)(A)(iii)).

The burden of satisfying the above-quoted public interest standard is on the requester. Larson v. C.I.A., 843 F.2d 1481, 1483 (D.C. Cir. 1988). Under well-established case law, FOIA fee waiver requests must be made with "'reasonable specificity'" and based on more than "'conclusory allegations.'" Judicial Watch, Inc. Rossotti, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (citing Larson, 843 F.2d at 1483, and Nat'l Treasury Employees Union v. Griffin, 811 F.2d 644, 647 (D.C. Cir. 1987)). And indigence alone, without a showing of public benefit, is insufficient to warrant a fee waiver. Ely v. United States Postal Service, 753 F.2d 163, 165 (D.C. Cir. 1985); Durham v. United States Dep't of Justice, 829 F. Supp. 428, 435 n.10 (D.D.C. 1993).

-2-

Your fee waiver request is based on conclusory statements and contains no real specificity with respect to the required showing. For example, you offer no explanation as to how the information you seek would contribute significantly to the public's understanding of government operations or activities. While it is true, as you state, that your cases have been publicly reported, that alone cannot justify a waiver; otherwise, any party who litigates with the government would be entitled to a waiver. In addition, you fail to show how disclosure of the requested records will contribute to the understanding of a reasonably broad audience of persons interested in their subject matter, as opposed to merely conferring a personal benefit on you. Carney v. United States Dep't of Justice, 19 F.3d 807, 814 (2d Cir. 1994); McClain v. United States Dep't of Justice, 13 F.3d 220, 220-21 (7th Cir. 1993). Further, you have acknowledged that many of the documents you now seek were produced to Hubert Santos [your criminal attorney] by OTS and/or the U.S. Attorney's Office, and you offer no justification for OTS incurring substantial additional costs in providing these same documents to you a second time.

Based on the foregoing analysis, your request for a fee waiver is denied.

You may wish to appeal the denial of your request for fee waiver. If you decide to do so, your appeal must be filed within 35 days of the date of this letter. It should be addressed to FOIA Appeals, Office of Thrift Supervision, 1700 G Street, N.W., Washington, D.C. 20552. Your appeal should clearly state the grounds upon which you believe this denial is in error. The Office of Thrift Supervision will make a determination and notify you in writing of the outcome of your appeal.

Further Processing of Your September 3 Request. If you wish at this time for OTS to search for and provide you with copies of all records in its possession relating to you, kindly forward a check made payable to "Office of Thrift Supervision" in the amount of $3,000 to cover the estimated search and duplication costs. If the actual cost differs from the estimated amount, we will forward a refund or additional invoice to you.

Alternatively, as I previously suggested, if you wish to narrow the scope of your request, please call me (202-906-6502) so we can discuss the parameters of the request as narrowed.

Most sincerely,

Martin Jefferson Davis
Senior Attorney

-3-