UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL G. MORGAN, | : | |
| Plaintiff, | : | Docket No. 3:02CV00905 (AVC) |
| VS. | : | |
| OFFICE OF THE UNITED STATES ATTORNEY FOR THE DISTRICT OF CONNECTICUT, et al., | : : | |
| Defendant. | : | October 29, 2003 |

### UNITED STATES ATTORNEY'S OFFICE'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

The Government hereby files its reply to the plaintiff's opposition memorandum dated October 20, 2003, filed in opposition to the United States Attorney's motion for summary judgment. This reply is filed in accordance with this District's Local Rule 7(d). The United States Attorney's Office ("USAO") respectfully maintains that dismissal of the Plaintiff's amended complaint remains appropriate, and that the Government's pending motion for summary judgment should be granted.

### Argument

1. The Plaintiff states at Page 2[1], Paragraph 2 that he narrowed his request at the July 17, 2003 settlement conference to USAO's documents 2, 3 and 11 [in their entirety]. This is an erroneous statement since Mr. Morgan limited his request at the settlement conference to

---

[1] The plaintiff failed to number the pages of his opposition memorandum. In order to comply with Local Rule 7(d) concerning reply briefs, the Government has supplied numbering to the plaintiff's memorandum.

*portions* of Documents 2 and 3 relating to "pretrial interview of witnesses, and how the regulatory agents are involved in a prosecution" (portion of Document 2); and "letters between the USAO and OTS concerning legal strategy" (portion of Document 3). The USAO respectfully requests that the Court confirm this narrowed request to *portions of documents* with the Honorable J. Read Murphy, PJO, who presided at the July 17, 2003 settlement conference.

Since Mr. Morgan limited his request at the July 17, 2003 settlement conference, he can not now argue (as he does at Page 2, Paragraphs 3 and 4 of his opposition) the importance of Documents 2 and 3 *in their entirety*, and the merits of the claimed exemptions as they apply to Documents 2 and 3 *in their entirety*.

2. The Plaintiff states at Page 3, Paragraph "A. Fleischman" that when Mr. Morgan narrowed his discovery request by letter dated November 22, 1998, he maintained his request to receive "any and all material that concerns former Assistant United States Attorney Keith Fleischman who worked on this case." The USAO does not dispute this point and has so stated at Page 8 of its memorandum in support of motion for summary judgment. The USAO has confirmed that it searched all documents from all seven boxes in response to this request. Exemptions claimed in the USAO's *Vaughn* index may be applicable to these requested documents to the extent these documents exit.

3. The Plaintiff searches for an explanation at Page 4, Paragraph 2 of his memorandum concerning communication between USAO and OTS personnel during a criminal investigation.

Mr. Morgan has previously indicated that the driving force behind his FOIA request is to develop information to support a claim of double jeopardy, i.e. that the criminal matter prosecuted by the USAO, and the civil matter conducted by OTS (ultimately referred to the

USAO Civil Division for enforced collection) were the same matter. It is the Government's understanding that if Mr. Morgan were to prevail in his double jeopardy claim, he would use his victory as the basis to further seek to expunge his criminal conviction record. Apparently, Mr. Morgan anticipates that a primary defense to an action raising a double jeopardy argument is that the criminal investigation led by the USAO; and the civil litigation led first by OTS (and then the USAO's Civil Division), were separate and distinct, and therefore not subject to double jeopardy principles.[2]

This FOIA litigation is not the proper forum to argue double jeopardy issues; however, Mr. Morgan's negative characterization of communication between the USAO and OTS during the course of a criminal investigation cannot be ignored.

The USAO is restricted pursuant to Fed.R.Crim.P. 6 from sharing any grand jury material developed through a criminal investigation, and indeed the USAO proceeds in an abundance of caution whenever it deals with grand jury material. The same restrictions may not necessarily apply to **non**-grand jury material. Furthermore, information may well be developed from federal agencies during the course of a criminal investigation. To the extent that communication occurred between the USAO and OTS during the course of either the criminal investigation, or the referral to the USAO's Civil Division, such communication should not lead this Court to draw the negative inference that Mr. Morgan seeks.

4. The Plaintiff recites a payment history at Page 5, Paragraphs 1 through 5 of his opposition memorandum. The Plaintiff claims at Paragraph 5 that "the USAO sent the payment

---

[2] See discussion at Footnote 1 of defendant OTS' Reply Memorandum in Support of Motion for Summary Judgment, dated November 3, 2003.

3

to the U.S. District Court where it was applied to Plaintiff's criminal fine". This statement is erroneous and inconsistent with Paragraph 4 of the opposition memorandum, as well as the Plaintiff's corresponding Exhibits J and K.[3]

Paragraph 4 of the Plaintiff's opposition memorandum and Exhibit J clearly show that the FDIC's check was made payable to the Clerk of Court, and mailed to the Clerk of Court at "141 Church Street, New Haven, Connecticut". The New Haven USAO is, of course, located at 157 Church Street, New Haven, Connecticut. The USAO had nothing to do with this transaction.

The Court is well aware that when any criminal imposition is paid to the Clerk of Court (as required by 18 U.S.C. § 3611), the Clerk issues a receipt of the payment to the USAO's Financial Litigation Unit ("FLU"), so that the FLU may update its internal payment records. That was done in this case, as reflected in the debtor statement (Exhibit K), generated by the USAO as a courtesy to Mr. Morgan. Debtor statements show payments made to the Clerk's Office, based on the receipts received by the FLU. The FLU/USAO played no part in directing the Clerk's Office as to how to apply Mr. Morgan's payment. The USAO respectfully requests that this Court confirm the processing of Mr. Morgan's payment with the Clerk's Office.

5. The Plaintiff requests that sanctions be imposed upon the USAO at Page 6 of his memorandum in opposition to the USAO's summary judgment motion. The Plaintiff further states at the top of Page 7 that it is not true that Mr. Morgan deleted his request for newspaper articles in his letter of November 22, 1998. The November 22, 1998 letter speaks for itself, and

---

[3] The exhibits to the Plaintiff's memorandum in opposition to the USAO's summary judgment motion are not clearly marked. Undersigned counsel for the USAO assumes that exhibit J corresponds to a copy of a check in the amount of $2,613.00 from the FDIC to the Clerk of Court, and that exhibit K is a copy of a debtor statement generated by the USAO.

4

the Government requests that the Court review the exhibit. Mr. Morgan states at Paragraph 2 of the letter that "I am agreeable to paying the fee for duplication but I do want to reformulate my request in order to meet my needs at a lower cost." Paragraph 3 then lists the documents that Mr. Morgan requests. No where in Paragraph 3 does Mr. Morgan state that he requests copies of newspaper articles. Given the facts that (1) newspaper articles are available for free in the public domain; (2) Mr. Morgan reformulated his request to save costs of duplication; and (3) Mr. Morgan did **not** request copies of newspaper articles in his reformulated request of November 22, 1998; the Government determined that newspaper articles were not sought by Mr. Morgan's reformulated request.

The Government has **never** claimed that newspaper articles are somehow exempt from disclosure. On the contrary, the explanation for Document 15 on the USAO's *Vaughn* Index clearly states that newspaper articles were "not included within the scope of the [FOIA] request". Mr. Morgan has attempted to portray the Government as simply unwilling to produce newspaper articles. Nothing could be farther from the truth. It is Mr. Morgan who is simply unwilling to pay the costs related to his FOIA request. If Mr. Morgan is truly willing to pay his overdue costs for the documents previously produced, as well as the additional costs to process and copy newspaper articles, he should so advise the Government and make the necessary payment arrangements.

In any event, the Government respectfully contends that Mr. Morgan's request for sanctions for failure to produce copies of newspaper articles is baseless, and should be denied.

6. The Plaintiff states at Page 7 of his memorandum in opposition to the USAO's summary judgment motion that "there has been a discrepancy, almost since the inception of this

action regarding the number of pages responsive to the Plaintiff's FOIA request." Mr. Morgan then mischaracterizes the entire processing of his FOIA request by the USAO and the Executive Office for United States Attorneys ("EOUSA").

To summarize the process, in October, 1998 the USAO located seven boxes of documents containing materials responsive to Mr. Morgan's original FOIA request. Mr. Morgan was then advised of the cost to process all seven boxes. In November, 1998, realizing the cost involved in processing all seven boxes, Mr. Morgan reformulated his request "in order to meet my needs at a lower cost". Based upon Mr. Morgan's reformulated request, the original seven boxes of documents were reduced to two boxes, which were then provided to EOUSA to determine if exemptions applied to any of the documents contained in those two boxes.

Now, Mr. Morgan is requesting that this Court (1) simply ignore his November, 1998 reformulated request; (2) draw a negative inference concerning the USAO's compliance with FOIA and federal regulations; and (3) expand the scope of this FOIA litigation- all at no cost to Mr. Morgan.

Mr. Morgan's arguments must fail because they are unsupported by the facts; and are designed to circumvent the applicable federal regulations concerning FOIA requests. See authorities previously cited in the USAO's memorandum in support of motion for summary judgment.

If Mr. Morgan wants to revive his original FOIA request, *and* is truly willing to pay the costs associated with the processing that request, he should so advise the Government and make the necessary payment arrangements. The Government would then commence processing the request again, as it had begun to do in October, 1998.

6

## Conclusion

Based upon the reasons articulated in this reply and the USAO's previously filed memorandum in support of motion for summary judgment, the USAO respectfully submits that summary judgment is appropriate and Mr. Morgan's amended complaint should be dismissed.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

CHRISTINE SCIARRINO
ASSISTANT UNITED STATES ATTORNEY
P.O. BOX 1824
NEW HAVEN, CT  06510
(203) 821-3700
FEDERAL NO. CT05289

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, on this 29th day of October, 2003, to:

Michael G. Morgan
415 South Chesterfield Street
Aiken, South Carolina  29801

Barbara Katron, Esq.
FDIC
550 17th Street, NW
Washington, DC  20429

Dirk Roberts, Esq.
Office of Thrift Supervision
1700 G Street, N.W.
Washington, DC  20552

_____
CHRISTINE SCIARRINO