United States District Court
District of Connecticut
FILED AT     HARTFORD
             1/6/04
             10/21/03            19
Kevin F. Rowe, Clerk

By _____
         Deputy Clerk

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

MICHAEL G. MORGAN            :
                             :
          Plaintiff,         :       Civil Action: 3:02cv905(AVC)
                             :
     v.                      :
                             :
                             :
OFFICE OF THE UNITED STATES  :
ATTORNEY FOR THE DISTRICT    :
OF CONNECTICUT, et al.,      :
                             :
          Defendants.        :       October 20, 2003

### PLAINTIFF'S MOTION FOR IN CAMERA REVIEW, NEW VAUGHN INDEX AND OPPOSITION TO THE MOTION FOR SUMMARY JUDGEMENT OF THE UNITED STATES ATTORNEY FOR THE DISTRICT OF CONNECTICUT

This is an action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C., sec. 552, as amended, to compel the production of records relevant to Plaintiff's criminal prosecution (Case No. 3:93cr212(PCD)).

Plaintiff has a statutory right to the records he seeks and there is no legal basis for the refusal by the Office of the United States Attorney for the District of Connecticut ("USAO") to disclose them. Not only is Defendant's refusal to disclose a violation of Plaintiff's constitutional right to due process but also Defendant's continued stonewalling, concealment and misrepresentations is an affront to the Court.

---

(replaces) The motion is granted to the extent it seeks in camera review of the three documents at issue. The motion is denied however to the extent it seeks a revised Vaughn index or any further review or production by the USAO in this litigation. See block endorsement granting the USAO's motion for summary judgment rendered this day.

SO ORDERED
Alfred V. Covello, U.S.D.J.
January 9, 2004.

IN CAMERA REVIEW. In its March 28, 2003 Order, the Court advised Plaintiff that he might move for in camera review and inspection of any documents withheld by the Defendant in connection with the Vaughn Index which was ordered to be produced at that time.

On June 30, 2003, USAO submitted a Vaughn Index as directed by the Court. In a July 17, 2003 pretrial conference held before Presiding Judicial Officer J. Read Murphy, Plaintiff narrowed his request to three documents listed in the Index, numbers 2, 3 and 11. USAO has produced none of them.

In withholding these documents, Defendant is improperly claiming exemptions under 5 U.S.C., sec. 552 (b)(5) and (b)(7)(C). It is important to note that these so called "documents" are in fact bundles of documents dealing with different topics, with different dates, and addressed to different parties. By way of example, document 2 contains 68 pages of various material while document 3 contains 34 pages.

In taking this approach, it appears that the USAO is trying to gain an exemption for all documents in a bundle when in fact only one or two may legitimately merit exemption. Moreover, the Defendant is making the claim, unsupportable on its face, that the material is not segregable.

Accordingly, the Plaintiff respectfully requests permission to review documents 2, 3 and 11. Based upon Defendant's description in its Vaughn Index, Plaintiff would have a special interest in that part of document 3 described as "letters between the U.S. Attorney's Office and the Office of Thrift Supervision concerning legal strategy", that part of document 2 described as "...how the regulatory agents are involved in a prosecution...", and document 11 in its entirety if the third party described therein is an employee of either the Office of Thrift Supervision ("OTS") or the Federal Deposit Insurance Corporation ("FDIC").

REVISED VAUGHN INDEX. At the July 17, 2003 pretrial conference and before,

Plaintiff advised Defendant that its Vaughn Index did not appear to contain all the information which had been requested - specifically, all correspondence, memoranda, notes of conversations, copies of emails, etc. regarding Plaintiff between former Assistant United States Attorney Keith Fleischman and OTS personnel during the period 1990 - 1993. Also requested but not included were all correspondence, memoranda, notes of conversations, copies of emails, etc. regarding Plaintiff during the period 1996-2000 between USAO and the FDIC.

    A. Fleischman. With regard to former Assistant United States Attorney Fleischman, no information has been provided. In its pending motion, the Defendant is claiming that Plaintiff narrowed his FOIA request in 1998 so as to eliminate the requirement to produce this material. Quite to the contrary, Plaintiff's November 22, 1998 letter, upon which Defendant is relying in making this claim, states that "I also want to receive any and all material that concerns former Assistant United States Attorney Keith Fleischman who worked on this case." (Exhibit A).

    Plaintiff believes that former AUSA Fleischman improperly utilized the OTS' subpoena power to depose Plaintiff and use these depositions in the grand jury that was investigating Plaintiff in violation of Plaintiff's Fifth Amendment right to due process.

    Plaintiff's right to a fair investigation cannot be delegated by the USAO to the OTS. Not only was Plaintiff unaware of the grand jury's existence during this period but at no time was Plaintiff ever called to appear before the grand jury.

    Outside of this action, Plaintiff has obtained the following information:

    1. Plaintiff was subpoened for a deposition by OTS Attorney Kenneth Cureton, which took place on August 14, 1990.

    2. Fleischman issued at least one subpoena concerning Plaintiff on September 25, 1990 (Exhibits B and C).

3. Plaintiff was deposed a second time by OTS Attorney Cureton on October 30, 1990. It is noteworthy that out or at least twenty depositions conducted by Mr. Cureton, Plaintiff was the only individual to deposed a second time, months after the first.

4. Two days later, on November 1, 1990, Cureton sent a copy of Plaintiff's deposition to Fleischman (Exhibit D).

How did this happen? If the civil and criminal proceedings against Plaintiff were really separate and parallel, how did Cureton and Fleischman even know about each other at this very early stage in the investigation? In the interests of justice, these contacts between the USAO and the OTS need to be disclosed.

Obviously, Cureton and Fleischman were in touch during September - October, 1990. Otherwise, why else would Cureton send Plaintiff's deposition to Fleischman on November 1, 1990?

Perhaps documents 2, 3 and/or 11 can answer that. However, at this point, the USAO has produced nothing regarding the Fleischman matter. Outside of this action, Plaintiff has obtained additional information which provides ample evidence of close cooperation between these two agencies investigating Plaintiff. For example, Fleischman met with Cureton in Washington on July 1, 1991 "to discuss Mike Morgan and Charter Federal" (Exhibit E). In addition, Fleischman invited Cureton to attend a meeting in New Haven of the Connecticut Bank Fraud Working Group (Exhibit F).

For the Plaintiff, obtaining more information about this cooperation between the USAO and the OTS is critically important because it contradicts the Government's long standing representation to the Courts that the civil and criminal proceedings against Plaintiff were separate, parallel matters.

It is beyond dispute that the two agencies agreed to work together and to share information about Plaintiff. It seems likely that an understanding was reached between Fleischman and Cureton that the OTS would depose Plaintiff and that the depositions would be turned over to Fleischman for use in the grand jury.

It is understandable that the USAO would not want to disclose this arrangement with the OTS because such actions are improper. A grand jury investigation cannot be delegated to the OTS. Nevertheless, the attached exhibits provide an outline which suggests exactly that. This present action will compel the production of documents which will fill in the remaining blanks.

B. FDIC. With regard to the requested information concerning the USAO and the FDIC, Defendant has not produced any documents. As more fully described in Plaintiff's affidavit dated January 4, 2003 (Exhibit G), Plaintiff has obtained records, outside of this action, which indicate the following:

1. On January 19, 197, Plaintiff made a restitution payment of $2,316 to the OTS pursuant to Consent Order AP 93-7 (Exhibit H).

2. On March 13, 1997, Gina March of the OTS transposed the amount and sent an OTS check for $2,613 to the FDIC (Exhibit I).

3. The FDIC Washington office subsequently transferred this payment to the FDIC's cash management division in Dallas.

4. On September 28, 2000, the FDIC in Dallas cut a check for $2,613, made payable to the U.S. District Court and mailed it to the USAO (Exhibit J).

5. On October 4, 2000, the USAO sent the payment to the U.S. District Court where it was applied to Plaintiff's criminal fine (Exhibit K).

While the Defendant is now claiming that there are no records in its Financial Litigation

Unit, it is inconceivable that a transfer of funds between two government agencies would not be well documented. (Perhaps these records are filed elsewhere?). It would seem highly likely, for example, that someone from the USAO contacted someone at the FDIC to effectuate this transfer.

The reason the Defendant is stonewalling about this matter is that this information also contradicts the Government's longstanding representation to the Courts that the civil and criminal proceedings against Plaintiff were separate, parallel matters. Clearly, that cannot be true if the Government took Plaintiff's civil restitution and applied it to his criminal fine.

Accordingly, Plaintiff respectfully requests that this Court order the USAO to reevaluate Plaintiff's FOIA request with regard to both the Fleischman and FDIC matters and either produce the relevant information or provide a revised Vaughn Index which includes this information.

SANCTIONS. Pursuant to Local Rule 31, Plaintiff requests that this Court impose sanctions on the Defendant and its counsel for disobeying an order of the Court and intentionally obstructing the effective and efficient administration of justice. Plaintiff makes this request for the following reasons:

In its March 28, 2003 Order, the Court stated that:

> "the burden shifts to the plaintiff to make a showing of agency bad faith sufficient to impugn the agency's affidavits. Fisher v. FBI 94 F. Supp. 2d 213, 218 (D. Conn. 2000). The plaintiff has made such a showing. In particular, the plaintiff has demonstrated that the government withheld or otherwise failed to produce newspaper articles – documents that are simply not exempted. While the government has agreed to disclose those articles at this time, the fact remains that the government's earlier action was improper and this raises a genuine issue that either the government's search was inadequate or that other documents have been improperly withheld."

The Defendant has not produced any newspaper articles, its representation to the Court notwithstanding. In its pending motion, the Defendant is now making the ludicrous claim that its noncompliance with the Court's Order is due to the fact that the Plaintiff does not want newspaper

articles. In making this unsupportable assertion, the Defendant is claiming that Plaintiff excluded newspaper articles in his reformulated FOIA request dated November 22, 1998. That is simply not true. The only items deleted were "trial transcripts, grand jury transcripts, trial pleadings or any material prepared in connection with the various motions on appeal (except for that material (i.e. motions, correspondence) which relate to the Office of Thrift Supervision)." (Exhibit A).

Not only is this failure to produce an example of demonstrable bad faith by the Defendant but it shows that the Defendant is now treating the Court with the same contempt and high handedness to which the Plaintiff has been subjected during the five years his FOIA request has been outstanding.

In addition, there has been a discrepancy, almost since the inception of this action, regarding the number of pages responsive to Plaintiff's FOIA request.

In a letter dated November 17, 1998, the Government asserted that there were "more than 28,000 pages of material responsive to your request..." (Exhibit L).

Based upon Plaintiff's reformulated FOIA request and Defendant's subsequent production of documents, Plaintiff undertook an analysis to reconcile the pages in an affidavit dated August 29, 2002 (Exhibit M). That analysis showed at least 22,655 pages unaccounted for. Even taking into account what has been produced since then, there are more than 20,000 missing pages.

Unable to refute that analysis, the Defendant has now shifted gears and is trying to sell "the box story". Without a credible explanation for the missing pages, it now tries to change the subject by saying that we should not be talking about pages of information but boxes of documents instead. Defendant admits that it arbitrarily decided that only two boxes out of the seven in its possession were responsive to Plaintiff's request.

When directed by the Court to reevaluate Plaintiff's FOIA request, Defendant only

inspected its two arbitrarily selected boxes and ignored the other five.

Neither the Plaintiff nor the Court have any knowledge as to the contents of the five boxes that have been withheld by the Defendant. However, given the fact that there is so much missing information, it seems likely that Defendant put the requested documents in one or more of the five boxes. Since Defendant is no longer looking in any of those boxes, it should come as no surprise that the Defendant cannot find any of the requested information.

At best, this box story is an example of willful stupidity. By not inspecting the five boxes after the Court ordered Defendant to reevaluate Plaintiff's FOIA request, the Defendant intentionally delayed a resolution of this case and obstructed the effective and efficient administration of justice.

The Government's stonewalling and tactics of concealment and misrepresentation must end.

Accordingly, the Plaintiff respectfully requests that the Court impose an appropriate sanction on the Defendant and its counsel in this matter.

DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT. In order for the Government to prevail on a motion for summary judgement in an FOIA case, it must demonstrate that not only are there no material facts in dispute and that it is entitled to judgement as a matter of law, See Fed. R Civ. P. 5b; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F. 3d 293, 300 (2d Cir. 2000), but also that it's search for documents was adequate and any documents withheld fell within the exemption of the applicable FOIA sections, See Tarullo v. U.S. Department of Defense, 170 F. Supp 2d 271, 274 (D. Conn. 2001).

The USAO does not meet that test for summary judgement. The Defendant's search for

documents was inadequate because it failed to produce or list in the Vaughn Index any of the Fleischman or FDIC requested records, the agency affidavits used to support the motion are contradicted by Plaintiff's affidavits and other exhibits, the bundling of documents to create documents 2 and 3 and then to claim all pages in both bundles are exempt and non segregable is improper. Not only are there material facts in dispute but there is evidence of continued agency bad faith with regard to Plaintiff's FOIA request.

    Consequently, the Plaintiff respectfully requests that the Court deny Defendant's motion for summary judgement.

    CONCLUSION. For the foregoing reasons, the Plaintiff asks the Court to:

    1. Permit Plaintiff to inspect documents 2, 3 an11 in Defendant's Vaughn Index.

    2. Order Defendant to reevaluate Plaintiff's FOIA request by inspecting all documents in its possession with regard to the Fleischman and FDIC matters.

    3. Impose sanctions on the Defendant and its counsel for disobeying an Order of the Court and intentionally obstructing the effective and efficient administration of justice.

    4. Deny Defendant's motion for summary judgement.

Respectfully submitted,

*[signature]*

Michael G. Morgan, Pro Se
415 South Chesterfield Street
Aiken, South Carolina 29801
(803) 641-8823

# CERTIFICATE

This will certify that a copy of the foregoing was mailed, postage prepaid, on this 20th day of October, 2003 to the following:

Barbara Katron
Counsel
Federal Deposit Insurance Corporation
550 17th Street, NW
Washington, D.C. 20429

Dirk S. Roberts
Special Counsel
Office of Thrift Supervision
1700 G Street, NW
Washington, D.C. 20552

Christine Sciarrino
Assistant United States Attorney
P. O. box 1824
New Haven, Connecticut 06510


_____
Michael G. Morgan, Pro Se